IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

**FILED**

MAR 09 2026

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

CASE NO.: 2:25-cv-03360-DJC-JDP

JACQUE CHOKROLA OJADIDI,

Plaintiff,

vs.

MORE COMMERCE, INC., a Delaware corporation;

MICHAEL SCHNAPF, an individual;

and RICHARD STARR, an individual,

Defendants.

-----------------------------------------------------------------

**PLAINTIFF'S OPPOSITION TO DEFENDANT MORE COMMERCE, INC.'S MOTION TO DISMISS, OR ALTERNATIVELY STAY AND COMPEL ARBITRATION OR TRANSFER VENUE; REQUEST FOR JUDICIAL ESTOPPEL, UNCONSCIONABILITY FINDING, AND DENIAL OF ARBITRATION/TRANSFER, AND FINDING OF WIRE FRAUD**

Hearing Date: April 23, 2026
Time: 10:00 a.m.
Courtroom: 9 (13th Floor)
Judge: Hon. Daniel J. Calabretta

Opposition to Motion to Dismiss or Alternative Stay, Transfer Venue NO 2:25-cv-03360-DJC-JDP

## I. INTRODUCTION

Defendant More Commerce, Inc. asks this Court to dismiss Plaintiff's claims based on arguments that are directly contradicted by its own prior positions in Sacramento Superior Court. There, Defendant successfully argued it had **no contacts with California** sufficient for jurisdiction. Now, in this Court, it relies on those very contacts to enforce an arbitration clause and seek transfer to New York. This is textbook judicial estoppel and gamesmanship that should not be rewarded. See New Hampshire v. Maine, 532 U.S. 742, 749 (2001).

More Commerce, Inc. was not a small operation struggling to survive. According to public business databases, the company generated annual revenues estimated between $25 million and $100 million, employed approximately 100-200 people, and operated offices in California, Pennsylvania, and Romania. They served over 100,000 merchants and integrated with many of the largest online marketplaces. This was a sophisticated, well-funded enterprise—not a struggling startup. Yet they now ask this Court to believe they had "no contacts with California" and that their systematic underpayments were innocent errors.

Plaintiff Jacque Chokrola Ojadidi personally suffered direct injury from Defendants' fraud and racketeering. He personally communicated with Defendants' representatives, personally relied on their false assurances—including promises of "good news" during the 2024 holiday season—and personally suffered reputational harm as a journalist and e-commerce merchant. He has standing to sue in his individual capacity.

The arbitration clause is unconscionable when applied to RICO claims alleging a

Opposition to Motion to Dismiss or Alternative Stay, Transfer Venue NO 2:25-cv-03360-DJC-JDP

Page - 2 -

pattern of criminal conduct—especially where the clause was part of the fraudulent scheme itself. Defendants' pattern of concealment—lying under oath in state court, withholding the W-9, and now seeking limited discovery arbitration—renders arbitration an inadequate forum. The forum selection clause is unreasonable given Defendants' California operations (including its Chico office) and fraud committed here.

For these reasons and those below, the motion should be denied in its entirety.

II. FACTUAL BACKGROUND

1. Plaintiff is the sole owner and operator of JMGJ Group Inc., a California corporation. (FAC ¶ 6; Exhibits E and F.)

2. Plaintiff personally opened the merchant account, personally communicated with Defendants' representatives, and personally relied on their repeated assurances that payouts were processing normally and would be made. During November and December 2024, Defendants' representatives specifically assured Plaintiff that "good news" was coming and that payments would be made "during the holidays" or shortly thereafter. (FAC ¶¶ 21-25; Exhibits G and I.)

3. Plaintiff's business relationship with Defendants predates More Commerce, Inc. Plaintiff originally conducted business with OpenSky, a predecessor platform that was shut down and merged into MoreCommerce. During that forced migration, Plaintiff's previous business email address (sales@parisjewelry.com) was rejected by the system. The company's employees or representatives instructed Plaintiff to register using his

Opposition to Motion to Dismiss or Alternative Stay, Transfer Venue NO 2:25-cv-03360-DJC-JDP

Page - 3 -

personal email address (jacqucojadidi@gmail.com) instead. Plaintiff followed these instructions, resulting in all substantive communications about payments, "good news," and assurances being directed to his personal email.

4. Defendants operated a physical office in Chico, California, with employees and ongoing business operations, as confirmed by LinkedIn and archived web pages. (FAC, Exhibits A and H; Wayback Machine archives.) Despite operating this office and transacting substantial business with California merchants, More Commerce, Inc. never registered as a foreign corporation with the California Secretary of State — a violation of California Corporations Code § 2105 that further demonstrates their disregard for California law and supports Plaintiff's claims of bad-faith operations in this District.

5. Defendants' failure to register as a foreign corporation and pay the required minimum $800 annual franchise tax to the California Franchise Tax Board — despite maintaining a physical headquarters in Chico and transacting substantial business with California merchants — constitutes willful evasion of California law. This illegal operation while collecting revenue from California residents further demonstrates bad faith, unclean hands, and a pattern of concealment that supports Plaintiff's RICO claims of wire fraud and systematic underpayment. See Cal. Rev. & Tax. Code § 19701 (willful failure to pay franchise tax as misdemeanor, with penalties up to $25,000 per year); Cal. Corp. Code § 2105 (requirement to qualify, with $20 per day penalty for unauthorized business).

Upon information and belief, Plaintiff has searched public business registration databases in several states where Defendants may have operated, including New

Opposition to Motion to Dismiss or Alternative Stay, Transfer Venue NO 2:25-cv-03360-DJC-JDP

York, Texas, and Florida. As of the date of this filing, no records have been found showing that More Commerce, Inc. ever registered as a foreign corporation in those states.

6. In early January 2025, despite having already decided to dissolve, Defendants continued to process orders through the MoreCommerce platform, collecting payments from customers for Plaintiff's goods. On January 13, 2025, Richard Starr personally responded to Plaintiff's email about login issues, directing staff to assist — further creating the illusion of normal operations. (Exhibit J.) Only after collecting these additional revenues did Defendants send the dissolution notice around January 20, 2025, cutting off all payments to Plaintiff and other merchants.

7. In the days immediately before dissolution, Defendants continued to actively process orders through the MoreCommerce platform. On January 18-19, 2025, Plaintiff received numerous order notifications, including over 15 orders on January 19 alone. (Exhibit L.) Orders continued to arrive as late as 9:00 a.m. on January 20, 2025 — the same day Defendants sent the dissolution notice. Defendants collected payment for all of these orders and never remitted a cent to Plaintiff.

8. In Sacramento Superior Court (Case No. 25CV006823), Defendants successfully moved to quash service on Michael Schnapf. There, Schnapf submitted a declaration under penalty of perjury stating he has "never resided in California," owns no California property, and never traveled to California for business related to Plaintiff. The court granted the motion based on these representations. (Exhibit E, Minute Order dated November 17, 2025, at 5, 7-8.) Defense counsel Timothy Hubber

also represented on the record during the Zoom hearing before Judge Julie G. Yap that Defendants had no business presence in California.

9. Despite possessing the W-9 for JMGJ Group Inc. during the state court proceedings, Defendants deliberately withheld this document and argued exclusively about "no contacts with California." (Schnapf Decl. ¶ 3, Ex. 1.)

10. Instead of making the promised payments, Defendants dissolved More Commerce, Inc. in January 2025 immediately after collecting holiday revenue. Now, Defendants rely on their contract with a California entity, their payments to a California bank account, and their California operations (including the Chico office) to enforce arbitration and transfer venue. These positions are irreconcilable.

## III. LEGAL STANDARD

A motion to dismiss for lack of standing is reviewed under Rule 12(b)(1). The plaintiff bears the burden. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

On a motion to compel arbitration, the court determines (1) whether a valid agreement exists, and (2) whether the dispute falls within its scope. Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).

On a motion to transfer under 28 U.S.C. § 1404(a), the court considers convenience and public interest factors. Atlantic Marine Constr. Co. v. U.S. Dist. Court, 571 U.S. 49, 62-63 (2013).

Judicial estoppel prevents a party from taking inconsistent positions in successive

Opposition to Motion to Dismiss or Alternative Stay, Transfer Venue NO 2:25-cv-03360-DJC-JDP

proceedings. New Hampshire v. Maine, 532 U.S. 742, 749 (2001).

IV. ARGUMENT

A. PLAINTIFF HAS STANDING TO SUE IN HIS INDIVIDUAL CAPACITY

1. Plaintiff Personally Suffered Direct Injury

Plaintiff personally suffered direct injury. Defendants' representatives sent false assurances directly to his personal email (jacqueojadidi@gmail.com). He personally relied on those assurances by continuing to list inventory and delaying legal action. Defendants themselves treated Plaintiff as the real party in interest when they invited him personally to submit a claim for the withheld funds during the January 2025 dissolution process. As a small merchant facing a multimillion-dollar company that served over 100,000 merchants, the reputational harm from their fraud directly impaired Plaintiff's personal livelihood.

As a journalist and e-commerce merchant, Plaintiff suffered profession-specific reputational harm. This reputational harm is personal to Plaintiff in his capacity as a journalist and public-facing e-commerce merchant. Business partners (Kroger, Shine, TikTok, Target) lost trust in him personally, not in the corporate entity. See Living Designs, Inc. v. E.I. Dupont de Nemours & Co., 431 F.3d 353, 361 (9th Cir. 2005) (reputational harm from fraud affecting business relationships is cognizable injury). The loss of goodwill and future business opportunities directly impaired Plaintiff's ability to earn a living in his chosen profession. These economic losses (lost contracts and future opportunities) were proximately caused by Defendants' wire fraud and misrepresentations directed at Plaintiff personally.

Opposition to Motion to Dismiss or Alternative Stay, Transfer Venue NO 2:25-cv-03360-DJC-JDP

See Holmes v. Securities Investor Protection Corp., 503 U.S. 258. 268 (1992) (RICO standing requires proximate causation).

This is direct personal injury, not merely derivative of corporate harm. See Doe v. Unocal Corp., 248 F.3d 915, 919 (9th Cir. 2001) (individual standing where direct injury exists).

See also Declaration of Jacque Chokrola Ojadidi (Exhibit F) (attesting to personal communications, reliance, and direct reputational injury).

Defendants may argue that because Plaintiff provided his personal email address during registration, any communications sent to that address were directed to the corporation rather than to him personally. This argument misses the point. The account originated on Defendants' predecessor platform OpenSky, which was shut down and migrated to MoreCommerce. During that forced migration, Plaintiff's business email was rejected by the system, and the company's employees or representatives specifically instructed him to use his personal Gmail address instead. Standing turns on who actually received the misrepresentations and who personally relied upon them — not on who entered an email address into a form. Here, Defendants sent repeated false assurances directly to Plaintiff's personal email, which he personally read and relied upon by continuing to list inventory and delaying legal action. This created an independent duty owed directly to Plaintiff as an individual. See Doe v. Unocal Corp., 248 F.3d 915, 919 (9th Cir. 2001); Smith v. Arthur Andersen LLP, 421 F.3d 989, 1002 (9th Cir. 2005).

2. Defendants' Position Is Logically Inconsistent

Opposition to Motion to Dismiss or Alternative Stay, Transfer Venue NO 2:25-cv-03360-DJC-JDP

Defendants cannot claim the contract binds Plaintiff (for arbitration/transfer) while simultaneously arguing he lacks standing because the account used the EIN of JMGJ Group Inc. Their positions are inconsistent.

3. FRAUD CLAIMS CREATE DIRECT PERSONAL STANDING

Defendants' fraud claims are fundamentally different from breach of contract claims. While the contract may have been with JMGJ Group Inc., the fraudulent misrepresentations were made directly to Plaintiff Ojadidi personally.

Defendants' fraudulent scheme is evidenced by specific false promises made directly to Plaintiff during the critical holiday period. In November and December 2024, Defendants' representatives sent emails assuring Plaintiff that "good news" was coming and that payments would be made "during the holidays" or shortly thereafter. (FAC ¶¶ 21-25; Exhibits G and I.)

These communications were not innocent optimism—they were deliberate misrepresentations designed to lull Plaintiff into continuing to list inventory and delay legal action while Defendants prepared to dissolve More Commerce, Inc. in January 2025. Under federal mail and wire fraud law, such "lulling letters" are themselves predicate acts that further the fraudulent scheme. See Shaw, Mail and Wire Fraud, in Techniques in the Investigation and Prosecution of Organized Crime (1980) (lulling letters made after a scheme's apparent completion are still in furtherance of the scheme).

The timing is devastating to Defendants: they promised payments "during the holidays," kept the platform operational through early January 2025, continued

processing orders and collecting revenue, and only then — around January 20, 2025 — sent dissolution notices and ceased all payments. (Exhibit J; Exhibit L; Exhibit G [dissolution notice].) This sequence proves fraudulent intent: they kept the platform running just long enough to collect additional revenue before pulling the plug.

In the days immediately before dissolution, Defendants continued to actively process orders through the MoreCommerce platform. On January 18-19, 2025, Plaintiff received numerous order notifications, including over 15 orders on January 19 alone. (Exhibit L.) Orders continued to arrive as late as 9:00 a.m. on January 20, 2025 — the same day Defendants sent the dissolution notice. Defendants collected payment for all of these orders and never remitted a cent to Plaintiff.

Under well-settled law, "a shareholder has standing to sue individually where the wrongdoer has breached a duty owed directly to the shareholder that is independent of any duty owing to the corporation." Abrams v. Donati, 66 N.Y.2d 951, 953 (1985); see also Smith v. Arthur Andersen LLP, 421 F.3d 989, 1002 (9th Cir. 2005) (shareholder standing for direct personal injury from fraud independent of corporation).

Here, Defendants owed Plaintiff Ojadidi independent duties because:

• They sent false assurances directly to his personal email address (jacqueojadidi@gmail.com);
• They made promises directly to him about personal payments, including specific "good news" during the holidays;

Opposition to Motion to Dismiss or Alternative Stay, Transfer Venue NO 2:25-cv-03360-DJC-JDP

• He personally relied on those promises;

• He personally suffered reputational harm as a journalist and merchant.

Defendants may argue that because Plaintiff provided his personal email during registration, communications were directed to the corporation. This ignores the context: The account originated on Defendants' predecessor platform OpenSky, which was shut down and migrated to MoreCommerce. During that forced migration, Plaintiff's business email (sales@parisjewelry.com) was rejected by the system, and the company's employees or representatives specifically instructed him to use his personal Gmail address instead. This technical requirement, imposed by the company's own agents during a chaotic platform closure, does not transform their direct, personal misrepresentations into corporate-only communications. The forced use of the personal email further supports that the contract formation was procedurally unconscionable under Cal. Civil Code § 1670.5.

Defendants breached an independent duty owed directly to Plaintiff Ojadidi by making fraudulent misrepresentations via his personal email that he personally relied upon. This gives him individual standing for fraud and RICO claims independent of the corporation. See Smith v. Arthur Andersen LLP, 421 F.3d 989, 1002 (9th Cir. 2005) (shareholder standing for direct personal injury from fraud independent of corporation).

As the sole owner and operator of JMGJ Group Inc. with no other shareholders or employees, Plaintiff is the real party in interest, and the harm flows directly to him personally. See Li v. ArcSoft, Inc., No. 21-55809 (9th Cir. 2026) (certifying question on shareholder damages in small entities).

Defendants owed Plaintiff an independent tort duty because they made specific false promises directly to him personally via his personal email and knew he would rely on them individually as the sole decision-maker for his business.

"Before a party may recover in tort for pecuniary loss sustained as a result of another's fraudulent misrepresentations, there must be a showing that there was either actual privity of contract between the parties or a relationship so close as to approach that of privity." Bernstein v. Arthur Andersen & Co., 325 Ill.App.3d 1152 (2001). Defendants' direct communications with Plaintiff Ojadidi satisfy this standard.

Moreover, in RICO claims predicated on wire fraud, no first-party reliance is required. See Bridge v. Phoenix Bond & Indemnity Co., 553 U.S. 639, 658 (2008) (no first-party reliance required for RICO mail/wire fraud claims); LeFande v. Blocker, No. 1:25-cv-54 (E.D. Va. Sept. 30, 2025) (reliance requirement overruled for RICO mail/wire fraud claims).

Thus, even if the Court were to find that contract claims belong to the corporation, Plaintiff Ojadidi's fraud and RICO claims arise from direct, personal injuries that he alone has standing to assert.

4. REPUTATIONAL HARM FROM FRAUD IS DISTINCT FROM DEFAMATION

Defendants may argue that reputational harm is not compensable under RICO, citing cases involving defamation or personal injury. Those cases are inapposite. Plaintiff does not claim Defendants defamed him by accusing him of wrongdoing. He claims Defendants' fraudulent scheme caused business partners to lose trust in him by association, resulting in lost contracts and revenue. When a platform fails and merchants are not paid, the merchants' professional reputations suffer regardless of

Opposition to Motion to Dismiss or Alternative Stay, Transfer Venue NO 2:25-cv-03360-DJC-JDP

Page - 12 -

fault. This is a direct consequence of fraud, not defamation.

The distinction is critical:

• Defamation cases involve reputational harm from false accusations, which is personal injury (see, e.g., Hamm v. Rhone-Poulenc Rorer Pharm., Inc., 903 F. Supp. 112 (D.D.C. 1995)).

• Fraud cases involve reputational harm from victimization by fraud, which can constitute injury to "business or property" when it affects business relationships. See Ceribelli v. Elghanayan, 990 F.2d 62 (2d Cir. 1993); Mendoza v. Zirkle Fruit Co., 301 F.3d 1163, 1171 (9th Cir. 2002) (fraud causing loss of business opportunities is RICO injury).

Here, Plaintiff's loss of goodwill and future business opportunities with Kroger, Shine, TikTok, and Target resulted directly from Defendants' fraud. These are concrete financial losses, not speculative reputational harms. See Diaz v. Parks, 420 F.3d 897, 900 (9th Cir. 2005) (interference with prospective business relations is injury to "business or property" under RICO). This reputational harm qualifies as injury to "business or property" under RICO even if it derives from personal circumstances, as the Supreme Court recently held. See Med. Marijuana, Inc. v. Horn, 604 U.S. 593, 602 (2025) (RICO provides remedy for business/property loss deriving from personal injury).

5. DEPOSITS TO BUSINESS ACCOUNT DO NOT DEFEAT STANDING

Defendants may argue that because funds were deposited to JMGJ Group Inc.'s business account, only the corporation has standing. This argument misses the distinction between financial loss and fraud-based injuries.

Opposition to Motion to Dismiss or Alternative Stay, Transfer Venue NO 2:25-cv-03360-DJC-JDP

Plaintiff's claims are not solely for the withheld funds—they are for the direct personal injuries he suffered: (1) reliance on false statements that caused him to continue listing inventory and delay legal action; (2) profession-specific reputational harm as a journalist; and (3) loss of goodwill with business partners, including Kroger, Shine, TikTok, and Target. These injuries are personal to Plaintiff, not derivative of corporate harm.

Under Franchise Tax Board v. Alcan Aluminium Ltd., 493 U.S. 331, 335-36 (1990), shareholders have standing for "direct, personal injury" independent of corporate harm. See also Medical Marijuana, Inc. v. Horn (2025) (RICO plaintiffs can recover for economic losses even when tied to personal circumstances, as long as the harm is to business or property).

The destination of the money does not erase the fact that Defendants' fraud was directed at Plaintiff personally, and he personally suffered as a result.

Defendants' new declaration from Michael Schnapf (filed February 26, 2026) actually proves Plaintiff's point. Schnapf admits that More Commerce received a W-9 from JMGJ Group Inc. and that Plaintiff submitted a claim during the dissolution process for the very funds at issue. (Schnapf Decl. ¶ 3.) Yet Schnapf simultaneously claims the company has "no record of making payment or owing money to Plaintiff (Jacque Chokrola Ojadidi) as an individual." This is a distinction without a difference. The money was earned through Plaintiff's personal efforts, promised directly to him via his personal email, and relied upon personally. The destination of the funds (a business account) does not erase the direct personal fraud and reliance. See Franchise Tax Board v. Alcan Aluminium Ltd., 493 U.S. 331, 335-36 (1990); Doe v. Unocal Corp.,

Opposition to Motion to Dismiss or Alternative Stay, Transfer Venue NO 2:25-cv-03360-DJC-JDP

Page - 14 -

248 F.3d 915, 919 (9th Cir. 2001). Defendants themselves treated Plaintiff as the real party in interest when they invited him personally to submit a claim for the withheld funds during the January 2025 dissolution process, rather than requiring a formal corporate submission.

The W-9 that Defendants now brandish to attack Plaintiff's standing actually proves the opposite of what they claim. It shows they knew JMGJ Group Inc. was a California-based business with a California address. Yet despite maintaining a physical office in Chico with employees — a "permanent place of business" under California law — Defendants never registered as a foreign corporation with the Secretary of State and never paid the $800 minimum franchise tax to the Franchise Tax Board. See Cal. Corp. Code § 2105; Cal. Rev. & Tax. Code § 23101.

This is not an oversight. It is intentional disregard. The W-9 they collected from Plaintiff is the very document that should have triggered their compliance obligations. Instead, they hid it in state court, lied about having California contacts, and now seek to use it as a weapon.

Defendants may claim the W-9 is standard and proves only corporate dealings, but this ignores their concealment of it in state court and the direct personal harms Plaintiff suffered — including personal emails, personal reliance on false assurances, and personal reputational injury. The W-9 does not erase these facts.

This pattern of concealment extends beyond California — Plaintiff's research as of March 8, 2026 shows no registration in New York, Texas,

Opposition to Motion to Dismiss or Alternative Stay, Transfer Venue NO 2:25-cv-03360-DJC-JDP

or Florida, further evidencing a pattern of non-compliance across multiple states. See, e.g., N.Y. Tax Law § 209 (similar franchise tax requirement for foreign corporations).

The duration of Defendants' California operations makes their non-compliance all the more egregious. More Commerce, Inc. was founded in 2018 and maintained its headquarters in Chico, California for over seven years, employing 100-200 people and generating tens of millions in annual revenue from California merchants. See SignalHire company profile, available at https://www.signalhire.com/companies/morecommerce-acquired-by-alibaba-group (accessed March 8, 2026). Despite operating a physical office in this state for nearly a decade, Defendants never registered as a foreign corporation with the Secretary of State and never paid a single dollar of the $800 minimum franchise tax required by law. This is not an oversight—it is intentional disregard.

6. UPON INFORMATION AND BELIEF, DEFENDANTS SYSTEMATICALLY UNDERPAID OTHER SMALL MERCHANTS

Based upon information and belief, Defendants' conduct was not limited to Plaintiff. The nature of the scheme—systematic underpayment over time, false assurances, and eventual dissolution—suggests that other small merchants were similarly affected. This belief is reasonable given:

• The recurring pattern of underpayment Plaintiff experienced on a bi-weekly and monthly basis;

• The uniform false assurances sent to merchants via the platform;

Opposition to Motion to Dismiss or Alternative Stay, Transfer Venue NO 2:25-cv-03360-DJC-JDP

• The abrupt dissolution in January 2025, which would have stranded

numerous unpaid merchants; and

• The public nature of the dissolution notice inviting creditor claims,

which Plaintiff responded to.

If true, the involvement of multiple victims would further establish the

"pattern of racketeering activity" required for RICO liability. See

H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989)

(pattern can be shown by related predicate acts over time affecting

multiple victims); see also Turner v. Cook, 362 F.3d 1219, 1229 (9th Cir.

2004).

Plaintiff respectfully submits that discovery may reveal the full scope

of Defendants' scheme and the number of merchants affected.

7. WIRE FRAUD PREDICATE ACTS INVALIDATE THE
CONTRACT AND CONFIRM PERSONAL STANDING

The underpayments — each effectuated via interstate wire transfers —
constitute separate predicate acts of wire fraud under 18 U.S.C. § 1343
and § 1961(1). Each underpayment was a wire communication in furtherance
of the fraudulent scheme, and together they establish a "pattern of
racketeering activity" as defined by RICO. See Sedima, S.P.R.L. v. Imrex
Co., 473 U.S. 479, 495 (1985) (the compensable injury in a RICO action
"necessarily is the harm caused by predicate acts sufficiently related
to constitute a pattern").

Most critically, Defendants continued to process orders and collect payments through January 18-20, 2025 — mere days before sending the dissolution notice. (Exhibit L.) These were not routine business transactions; they were wire fraud predicate acts committed while Defendants secretly planned to dissolve and abscond with the revenue. Each "Congrats! You received a new order" email was a lulling communication designed to keep Plaintiff shipping inventory while Defendants prepared to shut down. Under the "lulling letters" doctrine, such post-scheme communications are themselves in furtherance of the fraud. See U.S. Dep't of Justice, Criminal Resource Manual § 954 ("post-purchase mailings or wire transmissions that are designed to lull the victim into a false sense of security, postpone inquiries or complaints, or make the transaction less suspect can be in furtherance of the scheme"); United States v. Sampson, 371 U.S. 75 (1962).

These wire fraud predicates further invalidate the Merchant Agreement, as a contract used as an instrument of fraud is unenforceable. See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp., 622 F.3d 882, 891-92 (8th Cir. 2010). Moreover, because these wire transmissions were sent to Plaintiff's personal email address and caused him direct financial injury, they independently support his standing to sue in his individual capacity. Critically, no showing of "detrimental reliance" is required for RICO standing based on wire fraud. See LeFande v. Blocker, No. 1:25-cv-54 (E.D. Va. Sept. 30, 2025) (the Supreme Court "overruled any requirement for a plaintiff to establish that he detrimentally relied on a defendant's actions for RICO claims premised on mail and wire fraud").

The January 18-20, 2025 orders are particularly damning. Defendants actively solicited orders, sent celebratory emails, and collected payments — all while knowing they would dissolve within days and never pay Plaintiff. This is not breach of contract; it is theft through wire fraud, and it renders the entire Merchant Agreement void as an instrument of that fraud.

## 8. THE "LUZ OJADIDI" LISTING IS A CLERICAL ERROR MADE BY A THIRD-PARTY FILING SERVICE

Defendants may point to the Statement of Information listing "Luz Ojadidi" as an officer to argue that Plaintiff is not the sole decision-maker. This argument fails for multiple reasons.

First, Plaintiff did not prepare or file the Statement of Information himself. He paid a professional filing service to handle the incorporation paperwork. The erroneous listing of "Luz Ojadidi" was made by that third-party service without Plaintiff's knowledge or instruction. Luz Ojadidi is not and never was an officer, director, or employee of JMGJ Group Inc.

Second, this is precisely the type of clerical error that California law allows to be corrected. Under California Corporations Code § 109, any instrument filed with the Secretary of State may be corrected with respect to any misstatement of fact. Such errors do not affect corporate rights or liabilities unless someone detrimentally relied on the error, which no one has.

Third, even if the listing were accurate, it would not change the fact that Defendants directed their fraudulent communications to Plaintiff personally, that Plaintiff personally relied on those communications, and that Plaintiff personally suffered reputational harm. The presence or absence of another officer has no bearing on Plaintiff's direct personal injury.

Fourth, the same defense counsel who now scrutinizes Plaintiff's corporate paperwork made a typographical error in Plaintiff's own name on the mailing label for their motion papers. (See Exhibit G, mailing label showing "Chokroda" instead of "Chokrola.") If a professional law firm can make such an error, the minor clerical error in Plaintiff's corporate filing-—made by a third-party service without Plaintiff's knowledge—is hardly evidence of anything other than the routine mistakes that occur in business paperwork.

Fifth, even if Luz Ojadidi were a real person and a valid officer, California law explicitly allows any number of offices to be held by the same person. Cal. Corp. Code § 312(a). Thus, Plaintiff could still be the sole decision-maker regardless of who is listed on corporate paperwork.

Sixth, even if Luz Ojadidi were a real officer, California law designates only the President (or Chairperson of the Board) as the chief executive officer and general manager with decision-making authority. Cal. Corp. Code § 312(a). Plaintiff is the President. Luz Ojadidi, even if real, would have no decision-making authority under

the default statutory scheme. Thus, Plaintiff remains the sole decision-maker regardless of who is listed on corporate paperwork.

Seventh, any doubt about the clerical nature of the "Luz Ojadidi" error is eliminated by the attached evidence. Plaintiff's certified public accountant, Fernando Calderon, reviewed the filing and confirmed it was "probably a typo/autocorrect." (Exhibit H.) Upon discovering the error, Plaintiff immediately filed a corrected Statement of Information on March 4, 2026, which accurately lists Plaintiff as the sole officer and director. (Exhibit I.) The CPA also noted that the original SOI was "overdue, should have been filed last year," explaining why an erroneous version was submitted by the filing service. This timely correction demonstrates Plaintiff's good faith and confirms that Luz Ojadidi never existed.

Eighth, the typographical error in Plaintiff's own name on the mailing label for Defendants' motion papers further underscores that clerical mistakes are routine and carry no legal significance. The USPS label, prepared by defense counsel's office, misspells Plaintiff's middle name as "Chokroda" instead of "Chokrola." (Exhibit G.) If a professional law firm can make such an error in a document filed with this Court, the minor clerical error in Plaintiff's corporate filing—made by a third-party service without Plaintiff's knowledge—is hardly evidence of anything other than the routine mistakes that occur in business paperwork.

As the sole owner and operator of JMGJ Group Inc., Plaintiff is the real

Opposition to Motion to Dismiss or Alternative Stay, Transfer Venue NO 2:25-cv-03360-DJC-JDP

party in interest. A minor clerical error in a state filing—made by a third party without Plaintiff's knowledge—does not erase the personal nature of Defendants' fraud.

## 9. THE CONTRACT IS VOIDABLE DUE TO DEFENDANTS' MISREPRESENTATION AND ECONOMIC DURESS

The Merchant Agreement is voidable because Defendants induced Plaintiff to enter it through misrepresentation and economic duress. During the forced migration from OpenSky (Defendants' predecessor platform), Plaintiff's business email (sales@parisjewelry.com) was rejected by Defendants' system. The company's employees or representatives specifically instructed Plaintiff to register using his personal Gmail address instead, falsely representing that this was acceptable and necessary to continue the business relationship.

This was a material misrepresentation of fact. Plaintiff relied on it to his detriment, believing he was still contracting in his corporate capacity when in fact Defendants now use his personal email to argue he lacks standing. Under California law, a contract induced by fraud is voidable at the option of the defrauded party. See Cal. Civ. Code § 1689(b)(1); Engalla v. Permanente Med. Group, Inc., 15 Cal. 4th 951, 973 (1997) (fraudulent inducement renders contract voidable).

Additionally, Plaintiff signed under economic duress. He had no reasonable alternative—his business was already integrated with OpenSky, which Defendants shut down, forcing migration to MoreCommerce

Opposition to Motion to Dismiss or Alternative Stay, Transfer Venue NO 2:25-cv-03360-DJC-JDP

to continue operations. This left Plaintiff with no meaningful choice but to accept their instructions. See Rich & Whillock, Inc. v. Ashton Dev., Inc., 157 Cal. App. 3d 1154. 1158 (1984) (economic duress occurs when one party is compelled to agree to terms by wrongful threat that leaves no reasonable alternative).

Because the contract was procured through misrepresentation and duress, it is voidable. Plaintiff hereby gives notice of rescission, or alternatively requests that the Court decline to enforce the contract against him, including the arbitration and forum selection clauses contained therein. See Cal. Civ. Code § 1691 (requirements for rescission).

B. JUDICIAL ESTOPPEL BARS DEFENDANTS' MOTION

Defendants prevailed in Sacramento Superior Court by arguing they had **no contacts with California** sufficient for jurisdiction. Now they take the opposite position in this Court. Judicial estoppel prevents this. New Hampshire v. Maine, 532 U.S. 742, 749 (2001). All three factors are met:

1. **Clearly inconsistent positions** — In state court, Defendants argued "no contacts with California" and Schnapf submitted a declaration stating he has "never resided in California," owns no California property, and never traveled to California for business related to Plaintiff. (Exhibit E, Minute Order at 5, 7-8.) Defense counsel Timothy Hubber also represented during the Zoom hearing before Judge Julie G. Yap that Defendants had no business presence in California. In this Court, Defendants now rely on their contract with a California entity, their payments to a California

Opposition to Motion to Dismiss or Alternative Stay, Transfer Venue NO 2:25-cv-03360-DJC-JDP

Page - 23 -

bank account, and their California operations (including the Chico office) to enforce an arbitration clause and forum selection clause.

2. **They succeeded in state court** — The Superior Court granted their motion to quash based on their representations. (Exhibit E, Minute Order at 8: "Defendant Schnapf's motion to quash is GRANTED.")

3. **They would gain an unfair advantage if not estopped** — Defendants would escape jurisdiction in state court while simultaneously enforcing a contract in federal court based on the very California contacts they previously denied. This is precisely the "playing fast and loose with the courts" that judicial estoppel is designed to prevent.

The Court should reject their motion on this basis alone.

4. FRAUD ON THE COURT INDEPENDENTLY BARS DEFENDANTS' POSITION

Defendants' conduct in Sacramento Superior Court rises to the level of fraud on the court. Schnapf submitted a declaration under penalty of perjury stating he has "never resided in California," owns "no California property," and "never traveled to California for business related to Plaintiff." (Exhibit E at 5, 7-8.) These statements are demonstrably false, as More Commerce, Inc. operated a physical office in Chico, California. (FAC, Exhibits A and H.)

A judgment obtained by fraud on the court is a nullity. Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 814 (1945). Defendants cannot now seek equitable relief—compelling arbitration or transfer—while coming

Opposition to Motion to Dismiss or Alternative Stay, Transfer Venue NO 2:25-cv-03360-DJC-JDP

with unclean hands. See Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991) (courts have inherent power to address fraud on the court).

## 5. DEFENDANTS' FAILURE TO RAISE CORPORATE STANDING IN STATE COURT UNDERMINES THEIR POSITION

Defendants possessed the W-9 for JMGJ Group Inc. during the Sacramento Superior Court proceedings. (Schnapf Decl. ¶ 3, Ex. 1.) Yet in that forum, they made no mention of corporate standing or the W-9. Instead, they argued exclusively that they had "no contacts with California" and that Schnapf had "never resided in California," owned no property here, and never traveled here for business related to Plaintiff. (Exhibit E at 5, 7-8.) Defense counsel also represented on the record during the Zoom hearing that Defendants had no business presence in California.

Having prevailed in state court on those representations, Defendants now seek to deploy the W-9 and corporate identity as a new weapon to attack Plaintiff's standing in this Court. This is classic gamesmanship.

If Defendants genuinely believed Plaintiff lacked standing because the funds belonged to JMGJ Group Inc., they could have raised that defense in Superior Court. They chose not to. Their failure to raise this argument when it was available—coupled with their success on the inconsistent "no contacts" argument—confirms that their current position is an opportunistic afterthought, not a good-faith defense.

"The judicial estoppel doctrine prevents a party from asserting a claim

Opposition to Motion to Dismiss or Alternative Stay, Transfer Venue NO 2:25-cv-03360-DJC-JDP

in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002). Defendants cannot now assert a position they deliberately withheld while succeeding on an inconsistent one.

## C. THE ARBITRATION CLAUSE IS UNCONSCIONABLE AND DOES NOT BAR THIS ACTION

### 1. The Clause Is Procedurally and Substantively Unconscionable

The clause is both procedurally and substantively unconscionable. It was a hidden clickwrap term in a take-it-or-leave-it contract. It forces expensive New York arbitration and waives RICO treble damages. California courts refuse to enforce such one-sided clauses, especially when used to shield fraud and racketeering. See Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000).

### 2. The Arbitration Clause Is Unconscionable Because Plaintiff Cannot Afford It

The arbitration clause is also substantively unconscionable because it imposes significant costs that Plaintiff cannot afford. Under California law, when a plaintiff lacks the means to pay arbitration fees, the defendant must either pay those fees or waive arbitration. Roldan v. Callahan & Blaine, 219 Cal. App. 4th 87, 94 (2013); Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 113 (2000).

Plaintiff's original claim is approximately $12,000. He cannot afford JAMS filing fees ($2,000+), case management fees, or hourly arbitrator rates of $400–$1,000.

Opposition to Motion to Dismiss or Alternative Stay, Transfer Venue NO 2:25-cv-03360-DJC-JDP

Enforcing this clause would effectively deny him any forum for his RICO claims, violating both California public policy and federal policy favoring vindication of statutory rights. See Green Tree Financial Corp. v. Randolph, 531 U.S. 79, 90 (2000).

More Commerce, Inc. is a multimillion-dollar company with annual revenue of approximately $21 million and 51-200 employees, according to public business databases. They served over 100,000 merchants and integrated with major online marketplaces. This power imbalance between a large corporation and a small individual merchant like Plaintiff further demonstrates the procedural unconscionability of the arbitration clause, as it imposes costs and restrictions that a multimillion-dollar entity can afford but Plaintiff cannot. See Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000) (unequal bargaining power as factor in unconscionability).

Even if Defendants offer to pay the arbitration fees, this does not cure the clause's unconscionability. The limited discovery under JAMS rules would still prevent Plaintiff from proving his RICO claims, which require tracing financial records and third-party transactions. Paying fees does not fix the substantive unfairness of restricted discovery or the clause's role in the fraudulent scheme. See Armendariz, 24 Cal. 4th at 113 (unconscionability requires both procedural and substantive analysis); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 (1985) (arbitration unenforceable if it prevents vindication of statutory rights).

3. Limited Discovery in Arbitration Would Prevent Plaintiff from Proving His RICO Claims

Plaintiff's RICO claim requires proving a pattern of racketeering activity and

Opposition to Motion to Dismiss or Alternative Stay, Transfer Venue NO 2:25-cv-03360-DJC-JDP

systematic underpayment. This demands discovery of bank records, payment histories, internal communications, and third-party transactions — evidence solely within Defendants' control. Federal Rule of Civil Procedure 26 would allow full document requests and depositions. In contrast, JAMS Streamlined Rules severely limit discovery: document requests must be "directly relevant," depositions are presumptively limited to one per side, and e-discovery/metadata requires a "compelling need." These restrictions would make it impossible for Plaintiff to uncover the financial trail necessary to prove wire fraud and the pattern required for RICO liability. Courts have refused to enforce arbitration clauses that effectively prevent vindication of federal statutory rights. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 (1985); Ostroff v. Alterra Healthcare Corp., 433 F. Supp. 3d 1058, 1068 (N.D. Cal. 2020) (limited discovery as factor in substantive unconscionability).

4. The Clause Was Part of the Fraudulent Scheme

Moreover, the entire contract—including the arbitration clause itself—was an instrument of the fraudulent scheme. Enforcing arbitration would shield Defendants from liability for the very fraud they used to induce the contract, violating public policy. See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp., 622 F.3d 882, 891-92 (8th Cir. 2010) (arbitration clause unenforceable where contract used to perpetrate fraud). Enforcing arbitration would also violate federal policy against arbitrating RICO claims when the clause was part of the fraud scheme itself.

The question whether the arbitration clause was fraudulently induced is for this Court, not the arbitrator. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967).

Opposition to Motion to Dismiss or Alternative Stay, Transfer Venue NO 2:25-cv-03360-DJC-JDP

## 5. DEFENDANTS' PATTERN OF CONCEALMENT RENDERS ARBITRATION INAPPROPRIATE

Defendants' request for arbitration must be viewed against their documented pattern of concealment and bad faith. They submitted a false declaration in Sacramento Superior Court, withheld the W-9 they possessed at the time, operated an unregistered Chico office in violation of California law, and now seek to force Plaintiff into a forum with intentionally restricted discovery. This is not good-faith dispute resolution — it is an attempt to continue hiding evidence. Courts retain discretion to deny arbitration when a party's misconduct demonstrates that the arbitral forum would be used to perpetuate fraud rather than resolve it. See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp., 622 F.3d 882, 891-92 (8th Cir. 2010); 9 U.S.C. § 2.

## 6. ARBITRATION WOULD BE INAPPROPRIATE GIVEN PLAINTIFF'S SOLE-OWNER STATUS AND PERSONAL COMMUNICATIONS

As the sole owner and operator of JMGJ Group Inc., Plaintiff is the real party in interest, with complete unity between the corporation and himself personally. See Declaration of Jacque Chokrola Ojadidi (Exhibit F) ¶ 3. Defendants' communications — including the "good news during the holidays" assurances — were sent directly to Plaintiff's personal email at their instruction during the forced OpenSky migration, creating an independent duty owed to him individually. Forcing arbitration would deny this sole owner effective access to vindicate his RICO rights, as the limited discovery would prevent proving the fraud directed at him personally. See Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal.

Opposition to Motion to Dismiss or Alternative Stay, Transfer Venue NO 2:25-cv-03360-DJC-JDP

4th 83, 113 (2000) (unconscionability where arbitration denies effective forum); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 (1985) (arbitration unenforceable if it prevents vindication of statutory rights).

## D. THE FORUM SELECTION CLAUSE DOES NOT REQUIRE TRANSFER

Even if applicable, transfer is unreasonable. Defendants operated from Chico, California. The fraud and wire transfers occurred in this District. California has a strong public interest in adjudicating fraud against its residents. Atlantic Marine Constr. Co. v. U.S. Dist. Court, 571 U.S. 49, 62-63 (2013).

Judicial estoppel also bars this argument for the same reasons stated above. Defendants cannot deny California contacts to escape jurisdiction and then rely on those contacts to seek transfer.

## V. CONCLUSION

The motion should be denied in its entirety. Plaintiff respectfully submits that the Court may decide this matter on the papers or hold the scheduled hearing as appropriate.

Plaintiff, as a pro se litigant, respectfully requests that the Court construe this pleading liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (pro se complaint "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers"); see also Haines v. Kerner, 404 U.S. 519, 520 (1972) (same).

Opposition to Motion to Dismiss or Alternative Stay, Transfer Venue NO 2:25-cv-03360-DJC-JDP

## VI. REQUEST FOR LEAVE TO AMEND IF NECESSARY

In the event the Court finds any pleading deficiency, Plaintiff respectfully requests leave to amend the complaint. Leave should be freely given when justice so requires. See Fed. R. Civ. P. 15(a)(2): Foman v. Davis, 371 U.S. 178, 182 (1962) (leave to amend should be granted absent undue prejudice, bad faith, or futility).

Any amendment would not prejudice Defendants, as it would arise from the same core facts already alleged and discovery has not yet commenced. The Court should therefore grant Plaintiff leave to amend if it finds any defect in the pleading.

Dated: March 9, 2026

Respectfully submitted,

JACQUE CHOKROLA OJADIDI

Plaintiff, In Pro Per

10120 Wexted Way

Elk Grove, CA 95757

Telephone: (310) 990-0009

Email: jacqueojadidi@gmail.com

EXHIBITS

Opposition to Motion to Dismiss or Alternative Stay, Transfer Venue NO 2:25-cv-03360-DJC-JDP

Page - 31 -

NOTE: Exhibits A through D are already part of the First Amended Complaint (Docket No. 4) and are incorporated by reference. Only Exhibits E through L are attached to this Opposition.

Exhibit A: LinkedIn screenshots proving More Commerce, Inc. headquarters in Chico, California [Already on file as part of FAC, not re-attached here]

Exhibit B: August 2025 press releases proving Richard Starr formed Starr Holding Company and acquired Cacher.io [Already on file as part of FAC, not re-attached here]

Exhibit C: One-page timeline of the racketeering scheme [Already on file as part of FAC, not re-attached here]

Exhibit D: Screenshot of defunct morecommerce.com confirming January 2025 shutdown [Already on file as part of FAC, not re-attached here]

Exhibit E: Sacramento Superior Court Minute Order dated November 17, 2025 (Case No. 25CV006823) [Attached hereto]

Exhibit F: Declaration of Jacque Chokrola Ojadidi in Support of Opposition [Attached hereto]

Exhibit G: USPS Mailing Label from Defense Counsel showing typographical error in Plaintiff's name [Attached hereto]

Opposition to Motion to Dismiss or Alternative Stay, Transfer Venue NO 2:25-cv-03360-DJC-JDP

Exhibit H: Email from Fernando Calderon, CPA, dated March 4, 2026

[Attached hereto]

Exhibit I: Corrected Statement of Information filed March 4, 2026

[Attached hereto]

Exhibit J: Email chain between Plaintiff and Richard Starr dated January 13, 2025

[Attached hereto]

Exhibit L: Email notifications of orders processed January 18-20, 2025 [Attached hereto]

# EXHIBIT F

## DECLARATION OF JACQUE CHOKROLA OJADIDI IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS

DECLARATION OF JACQUE CHOKROLA OJADIDI IN SUPPORT OF
OPPOSITION TO MOTION TO DISMISS

I, JACQUE CHOKROLA OJADIDI, declare as follows:

1. I am the Plaintiff in this action. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto.

2. I am the sole owner and operator of JMGJ Group Inc., a California corporation. The corporation has no employees, officers, or directors other than myself.

3. As the sole owner and operator of JMGJ Group Inc. with no other employees, officers, or directors, there is complete unity between the corporation and myself personally. All business decisions, including whether to continue listing inventory based on Defendants' assurances, were made by me in my individual capacity. The withheld funds directly impacted my personal livelihood and ability to draw salary from the business.

4. I personally opened the merchant account with More Commerce, Inc. I provided my personal contact information, including my personal email address (jacqueojadidi@gmail.com).

5. Although I provided my personal email address (jacqucojadidi@gmail.com) during account registration, this was not a voluntary choice for corporate communications. The account originated on Defendants' predecessor platform OpenSky, which was shut down and migrated to MoreCommerce. During that forced migration, my business email (sales@parisjewelry.com) was rejected by the system, and the company's employees or representatives specifically instructed me to use my personal Gmail instead. All substantive communications about payments, "good news," and assurances of timely payouts were therefore sent directly to me in my individual capacity. I personally read, relied upon, and acted on those messages as an individual merchant and journalist.

6. Throughout my relationship with More Commerce, Inc., all communications were with me personally. Defendants' representatives sent emails directly to my personal email address. I personally read and relied on those communications.

7. Defendants' representatives provided repeated assurances that payouts were processing normally and would be made. These assurances included emails from support@morecommerce.com and dashboard notifications indicating that payments were scheduled. During November and December 2024, Defendants' representatives provided assurances that "good news" was coming and that payments would be made "during the holidays" or shortly thereafter. Based on these assurances, I continued listing inventory and delayed taking legal action.

8. I personally relied on these assurances. Based on them, I continued to list inventory on the More Commerce platform and delayed taking legal action to recover the funds owed.

9. As a result of Defendants' fraud, I personally suffered profession-specific reputational harm as a journalist and e-commerce merchant. This reputational harm is personal to Plaintiff in his capacity as a journalist and public-facing e-commerce merchant. Business partners (Kroger, Shine, TikTok, Target) lost trust in him personally, not in the corporate entity. The non-payment disrupted my business and personal finances.

10. I did not prepare or file the Statement of Information myself. I paid a professional filing service to handle the incorporation paperwork for JMGJ Group Inc. The listing of "Luz Ojadidi" as an officer was made by that service without my knowledge or instruction. Luz Ojadidi is not and never was an officer, director, or employee of the corporation. I am the sole owner, officer, and operator.

11. I have reviewed the motion filed by Defendants in this Court. I am aware that in Sacramento Superior Court, Defendants argued they had no contacts with California, and Michael Schnapf submitted a declaration stating he never resided in California, owned no California property, and never traveled here for business related to me. Notably, Defendants never mentioned the W-9 for JMGJ Group Inc. in state court, even though they possessed it at that time. They raised this document only now, in federal court, after succeeding on their "no contacts" argument.

12. I am also aware that in this Court, Defendants now rely on their contract with my California corporation, their payments to California bank accounts, and their California operations to enforce an arbitration clause and seek transfer to New York. These positions are directly contradictory.

13. Based on my personal knowledge of More Commerce's operations, including its physical office in Chico, California (confirmed by archived web pages attached as Exhibits A and H to the FAC), I believe the statements in Schnapf's Superior Court declaration—and his February 26, 2026 declaration filed in this case—that he had "never resided in California," owned no California property, and never traveled here for business related to me were materially false when made. The company's own records show continuous California operations during the relevant period.

14. I do not have the financial resources to pay substantial arbitration fees. My original claim was approximately $12,000, and I cannot afford thousands of dollars in JAMS filing fees, case management fees, and hourly arbitrator charges. Forcing me into arbitration would effectively deny me access to any forum to resolve my claims.

15. Based on my research and understanding, arbitration under JAMS rules provides very limited discovery. I would not be able to obtain the bank records, financial statements, internal emails, and third-party documents necessary to prove Defendants' fraud, RICO violations, and systematic underpayment. Given Defendants' history of concealing information—including lying under oath about California contacts and withholding the W-9—limited discovery would make it nearly impossible for me to prove my case.

16. Based on Defendants' conduct throughout this dispute—including Schnapf's false declaration in Superior Court and their strategic withholding of the W-9 until now— I believe they will continue to conceal evidence if forced into arbitration. The limited discovery available under JAMS rules would make it nearly impossible for me to uncover the financial records and internal communications needed to prove my case.

17. Based upon information and belief, I believe other small merchants were similarly affected by Defendants' conduct. This belief is based on the recurring pattern of underpayment I experienced, the uniform nature of the false assurances sent through the platform, and the abrupt dissolution in January 2025 that would have left many merchants unpaid. I am aware that Defendants sent a dissolution notice inviting creditor claims, which suggests there are other unpaid merchants.

18. I personally participated in the Zoom hearing before Judge Julie G. Yap in Sacramento Superior Court. During that hearing, defense counsel Timothy Hubber stated on the record that More Commerce, Inc. had no business presence in California. I heard this statement clearly and understood it to be a representation to the court about Defendants' lack of California operations.

19. On March 4, 2026, after learning that Defendants might rely on the erroneous "Luz Ojadidi" listing, I contacted my CPA, Fernando Calderon, to investigate. He confirmed it was likely a typo or autocorrect error by the filing service. (Exhibit H.) I immediately filed a corrected Statement of Information that same day, which accurately lists me as the sole officer and director. (Exhibit I.)

Page | 5

Declaration of Jacque Ojadidi in Support of Opposition to Motion to Dismiss **2:25-cv-03360-DJC-JDP**

20. I would not have registered with my personal email if Defendants had not instructed me to do so. Their system rejected my business email, and their employees or representatives told me to use my personal Gmail instead. I had no choice—my business depended on continuing with the platform after the OpenSky shutdown. I believed I was still acting on behalf of JMGJ Group Inc., and no one told me that using my personal email would affect my legal rights or standing.

21. Based on my research and review of public records, Defendants never registered as a foreign corporation in California. As a result, they have not paid the $800 minimum franchise tax or any income tax on their California operations. This is a violation of California Corporations Code § 2105.

22. Based on my research and review of public records in New York, Texas, and Florida, I have found no evidence that More Commerce, Inc. ever registered as a foreign corporation in those states. I conducted these searches using each state's official business entity database. This suggests a pattern of non-compliance in multiple states where they may have operated or had contacts, further evidencing their bad faith and intentional disregard for the law.

23. I have reviewed the USPS mailing label used by defense counsel to serve their motion papers. The label misspells my middle name as "Chokroda" instead of "Chokrola." (Exhibit G.) This demonstrates that even experienced law firms make typographical errors, and such

mistakes do not reflect on the underlying facts or legal claims.

24. Defendants systematically underpaid me on a recurring basis throughout our relationship. On multiple occasions on a bi-weekly and monthly basis, they deposited less than the full amount owed to my account. These were not isolated errors—they followed a pattern consistent with the fraudulent "bust-out" scheme alleged in the complaint.

25. On January 13, 2025, just days before Defendants dissolved the company, I emailed Richard Starr directly about login issues. He responded by forwarding my email to support with instructions to "assist this merchant." (Exhibit J.) This shows that Starr was personally involved and that Defendants were still holding out the platform as operational while secretly planning to dissolve.

26. In the days just before dissolution, my account received numerous orders through the MoreCommerce platform. On January 19, 2025 alone, I received over 15 order notifications. (Exhibit L.) Orders were still coming in at 9:00 a.m. on January 20, 2025. I shipped these orders in good faith, believing the platform was operational. Defendants collected payment for all of these orders and never paid me. This proves their intent was not to wind down business, but to steal as much revenue as possible before shutting down.

27. The January 18-20, 2025 order notifications (Exhibit L) and Starr's January 13, 2025 email (Exhibit J) were sent to my personal email

address while Defendants were secretly planning to dissolve. I relied on these communications to continue shipping inventory. Under the "lulling letters" doctrine, these are independent acts of wire fraud.

28. Based on my research, I understand that California law requires any foreign corporation with a physical office in the state to register with the Secretary of State and pay the $800 minimum franchise tax annually. Defendants never did this, despite having my W-9 showing my California address and operating a Chico office for years. This intentional disregard of their legal obligations further evidences their bad faith.

29. I have also learned through public business databases that More Commerce, Inc. was founded in 2018 and maintained its headquarters in Chico, California for over seven years, employing over 100 people and generating tens of millions in annual revenue. See SignalHire company profile, available at https://www.signalhire.com/companies/morecommerce-acquired-by-alibaba-group (accessed March 8, 2026). Despite this substantial California presence, they never registered as a foreign corporation and never paid the $800 annual franchise tax. This sustained non-compliance shows their conduct was not an accident but a long-standing practice.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that the exhibits attached hereto are

true and correct copies of the documents they purport to be.


Executed on March 9, 2026, at Elk Grove, California.


JACQUE CHOKROLA OJADIDI

Plaintiff, In Pro Per

10120 Wexted Way

Elk Grove, CA 95757

Email: jacqueojadidi@gmail.com

Phone: (310) 990-0009

# EXHIBIT E

SACRAMENTO SUPERIOR COURT MINUTE ORDER
CASE NO. 25CV006823
DATED NOVEMBER 17, 2025

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO
Gordon D. Schaber Superior Court, Department 25

### JUDICIAL OFFICER: HONORABLE JULIE G. YAP    $E-1$

Courtroom Clerk: L. Homsanith                                      CSR: None
Court Attendant: C. Levy

---

**25CV006823**                                                    November 17, 2025
                                                                  1:30 PM

**OJADIDI**
 **vs**
**SCHNAPF, et al.**

---

### MINUTES

**APPEARANCES:**

No Appearances

**NATURE OF PROCEEDINGS: Hearing on Motion to Quash Service of Summons**

**TENTATIVE RULING:**

On October 10, 2025, this Court issued its tentative ruling granting the motion of specially appearing Defendant Michael Schnapf ("Schnapf" or "Defendant") to quash service of summons as to the complaint of Plaintiff in pro per Jacque Chokroda Ojadidi ("Plaintiff"). (10/10/25 Tentative Ruling.) The October 10, 2025 tentative ruling is set forth below. On October 13, 2025, following oral argument, the Court affirmed the tentative ruling with the following modifications:

> At hearing, Plaintiff requested limited jurisdictional discovery. The Court orders the Parties to provide supplemental briefing regarding Plaintiff's request for jurisdictional discovery. Plaintiff shall file supplemental briefing in support of his request, not to exceed five pages, no later than October 22, 2025. Defendant shall file any opposition, not to exceed five pages, no later than November 3, 2025. This matter is continued to November 17, 2025, to allow time for the supplemental briefing.

(10/13/25 Order.)

On October 20, 2025, Plaintiff filed his supplemental briefing. Plaintiff argues that he requests leave to conduct limited jurisdictional discovery for two reasons: "1.) to establish facts that satisfy the Constitutional requirements necessary for this Court to exercise personal jurisdiction over Mr. Schnapf and include More Commerce, Inc. and Richard Starr as Defendants; and 2.)

$E-1$

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO

establish facts sufficient to plead fraud and alter ego liability causes of action." (Pf. Suppl. Brief, p. 2.)

E-2

On November 3, 2025, Defendant filed his supplemental briefing. Notably, Defendant highlights that Plaintiff's filed supplemental briefing is apparently incomplete: "while the court file lacks pages five to seven of Plaintiff's request for 15 interrogatories and 10 document requests, those requests demonstrate that Plaintiff's discovery." (Def. Suppl. Brief, p. 3: 9-10, footnote omitted.) Nevertheless, Defendant argues that the Court should deny Plaintiff's request to conduct jurisdictional discovery as the identified discovery exceeds the allegations in the complaint. Namely, Defendant argues that despite Plaintiff's stated need to conduct discovery which would support claims related to alter ego liability and/or fraud, claims against More Commerce, and claims against Richard Starr, any such claims and parties are not identified nor included in the complaint as presently alleged.

"A plaintiff attempting to assert jurisdiction over a nonresident defendant is entitled to an opportunity to conduct discovery of the jurisdictional facts necessary to sustain its burden of proof," and "[i]n order to prevail on a motion for a continuance for jurisdictional discovery, ... should demonstrate that discovery is likely to lead to the production of evidence of facts establishing jurisdiction." (*Hardell v. Vanzyl* (2024) 102 Cal.App.5th 960, 974–975. quoting *In re Automobile Antitrust Cases I & II* (2005) 135 Cal.App.4th 100, 127.) But, a continuance may be denied if there is no showing that discovery would likely produce evidence of additional contacts. (*Preciado v. Freightliner Custom Chassis Corp.* (2023) 87 Cal.App.5th 964 [holding that trial court did not abuse its discretion in denying discovery]; *Beckman v. Thompson* (1992) 4 Cal.App.4th 481, 486-487; see also *Yamashita v. LG Chem, Ltd.* (2023) 62 F.4th 496, 508 [holding that trial court's denial of jurisdictional discovery was not an abuse of discretion where it "would be little more than a fishing expedition seeking support for jurisdiction theories one of which is farfetched, and the other which [the defendants] have specifically denied via sworn statements"].)

In this case, the Court finds that Plaintiff has not demonstrated that the requested jurisdictional discovery is likely to lead to the production of evidence of facts establishing personal jurisdiction. To the extent Plaintiff requests *jurisdictional* discovery, Plaintiff asserts that he needs discovery to show:

- The number of California-based merchants and customers of More Commerce, Inc.
- The total volume of transactions and revenue derived from California in 2023-2025.

(Pf. Suppl. Brief, p. 3:18-20.) However, neither of these areas of inquiry provide facts regarding *Defendant Schnapf's* contacts with the forum state to support the exercise of specific personal jurisdiction over Defendant Schnapf, which is the subject of the pending motion.

E-2

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO

E-3

However, Plaintiff's own supplemental briefing sets forth that he is seeking discovery to assert claims against a defendant not yet named and causes of action not yet pled, not necessarily facts to support jurisdiction. (Pf. Suppl. Brief, p. 2:8-13.) Specifically, Plaintiff asserts that he seeks to include defendant More Commerce, Inc. and Richard Starr, parties not named in the Complaint, and to allege facts supporting fraud. (*Ibid.*) This is not the purpose of jurisdictional discovery. Specifically, Plaintiff contends that he needs additional discovery regarding fraud "to plead the claim with particularity" and "to allege . . . elements" regarding alter ego liability. Plaintiff cites no authority in support of his request that the Court open the doors to discovery *on the merits* prior to the court's adjudication of a motion to quash for lack of jurisdiction. While Plaintiff asserts that the Court found that Plaintiff's fraud claim lacked specificity, the Court notes that its tentative ruling made no such finding, as the matter was and is before the Court on a motion to quash for lack of personal jurisdiction, *not* on a motion challenging the sufficiency of the pleadings. Rather, the Court found that Plaintiff failed to present any evidence or argument to support sufficient minimum contacts by Defendant Schnapf with California giving rise to the instant causes of action for the Court to exercise specific personal jurisdiction. Likewise, the Court noted that Plaintiff did not assert or present evidence to support a theory of alter ego liability or corporate veil piercing to establish personal jurisdiction. In his supplemental brief, Plaintiff fails to identify any *jurisdictional* discovery he seeks to pursue in this regard.

Further, the Court notes that it appears Plaintiff's discovery plan appears primarily (if not entirely) based on requests for special interrogatories and requests for production of documents directed at a non-party. A request for production of documents pursuant to Code of Civil Procedure section 2031.010 *et seq.* may be served on any other party to the action, but cannot be used to obtain documents or evidence from a nonparty witness. (Code of Civil Proc., §§ 2031.010(a), 2025.280(b).) Likewise, interrogatories may be sent to "any other party" to the action, but not to nonparty witnesses. (Code of Civil Proc., § 2030.010.) As such, Plaintiff's proposed discovery plan appears to be primarily based on discovery that is not available to him in the manner proposed.

For the foregoing reasons, in its discretion, the Court declines to allow further continuance of the hearing on Defendant's motion to quash service of summons, so as to allow Plaintiff to conduct discovery on the jurisdictional issues as proposed in the supplemental brief. (*HealthMarkets, Inc. v. Superior Court* (2009) 171 Cal.App.4th 1160, 1173; *Sch. Dist. v. Superior Court* (1997) 58 Cal.App.4th 1126, 1131.) Plaintiff's request that this hearing be further continued so as to permit discovery on the issue of personal jurisdiction is DENIED.

The Court hereby reaffirms its October 10, 2025, tentative ruling granting the motion of specially appearing Defendant to quash service of summons with the additional analysis set forth herein. Defendant Schnapf's motion to quash is GRANTED, and he is dismissed from this action without prejudice. (Code Civ. Proc., §§ 418.10 (a)(1), 581(h).)

E-3

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO

This minute order is effective immediately. No formal order or other notice is required. (Code Civ. Proc., § 1019.5; Cal. Rules Court, rule 3.1312.)

E-4

## OCTOBER 10, 2025 TENTATIVE RULING:

The notice of motion does not provide notice of the Court's tentative ruling system, as required by Local Rule 1.06. Moving counsel is directed to contact opposing counsel and advise of Local Rule 1.06 and the Court's tentative ruling procedure and the manner to request a hearing. **If moving counsel is unable to contact opposing counsel prior to the hearing, moving counsel is ordered to appear at the hearing by Zoom or in person.**

The motion of specially appearing Defendant Michael Schnapf ("Schnapf" or "Defendant") to quash service of summons is ruled upon as follows.

Background

Plaintiff in pro per Jacque Chokroda Ojadidi ("Plaintiff") commenced this action by filing a form complaint on March 25, 2025, which named Defendants Schnapf and Todd Frostad ("Frostad") (collectively, "Defendants"). Plaintiff alleges causes of action for breach of contract and fraud. As alleged, Plaintiff supplied Defendants with good to be sold via e-commerce, and the proceeds from the sales were to be deposited by Defendants directly into Plaintiff's bank account. (See Compl.) Plaintiff alleges that, beginning in November 2024, Defendants began to systematically fail to deposit the proceeds from their online sales. (*Ibid.*)

Through this motion, Defendant moves to quash service of summons pursuant to Code of Civil Procedure section 418.10, asserting that the Court lacks personal jurisdiction over him; thus, Defendant requests that the Court quash service of summons and dismiss the action against him in its entirety. Specifically, Defendant contends that under the due process requirements for general jurisdiction, he lacks the requisite 'minimum contacts' with California to enable this court to exercise personal jurisdiction over him. Likewise, Mr. Schnapf argues that the Court lacks specific jurisdiction because he has not purposefully established contacts with California, he had no contacts with California that arise out of or are related to Plaintiff's claims, and that it would be unreasonable and violate notions of fair play and substantial justice to compel him to defend himself in a California court under these circumstances.

Discussion

When a nonresident challenges personal jurisdiction, the plaintiff must prove, by a

---

E-4

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO

*E-5*

preponderance of the evidence, the factual basis justifying the exercise of jurisdiction. (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 273.) "The plaintiff must do more than merely allege jurisdictional facts; the plaintiff must provide affidavits or other authenticated documents demonstrating competent evidence of jurisdictional facts." (*BBA Aviation PLC v. Superior Court* (2013) 190 Cal.App.4th 421, 428-429.)

A California court "may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." (Code Civ. Proc., § 410.10.) U.S. Supreme Court decisions recognize two types of jurisdiction: (1) general jurisdiction (sometimes called "all-purpose jurisdiction"), and (2) specific jurisdiction. (See *Bristol-Myers Squibb Co. v. Superior Court* (*Bristol-Myers*) (2017) 582 U.S. 255, 262.)

*General Jurisdiction*

Under a "general" jurisdiction analysis, nonresident defendants may be sued on causes of action unrelated to their activities within the state. (*Cornelison v. Chaney* (1976) 16 Cal.3d 143, 147.) The Supreme Court has acknowledged that "only a limited set of affiliations with a forum state will render a defendant amenable to all-purpose jurisdiction there," i.e. general jurisdiction – "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." (*Daimler AG v. Bauman* (2014) 571 U.S. 117, 137.) "Residence" is the place where one lives, even temporarily, regardless of the intent to remain; "domicile," on the other hand, is the place where one resides with the intent to remain indefinitely. (*DeYoung v. DeYoung* (1946) 27 Ca.2d 521, 524.) "A state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State." *Ford Motor Company v. Montana Eighth Judicial District Court* (2021) 592 U.S. 351, 358.)

The Supreme Court has expressly held that purchasing products and services for substantial sums from the forum state, sending personnel to the forum for training, and accepting money from a bank in the forum state is insufficient to subject a defendant to general jurisdiction. (*Helicopteros Nacionales de Colombia, S.A. v. Hall* (1984) 466 U.S. 408, 415-417.) The Supreme Court has also held that the inquiry is not whether a defendant's "in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that [defendant's] 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" (*Daimler, supra*, 571 U.S. at 138-139.)

In this case, Plaintiff presents no affidavits, declarations, or authenticated documents in support of any jurisdictional facts. However, Defendant submits a declaration that: (1) has never resided in California (Schnapf Decl. ¶ 5); (2) his personal residence is in Doylestown, Pennsylvania (*Id.*, ¶ 8); and (3) he does not own, and never has owned, any property in California.(*Id.*, ¶ 4.). As such, there is no evidence to support that Defendant is domiciled or otherwise "at home" in California. Accordingly, Plaintiff has failed to meet her burden to establish general jurisdiction.

*E-5*

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO

E-6

*Specific Personal Jurisdiction*

"A court may exercise specific jurisdiction over a nonresident defendant only if: (1) the defendant has purposefully availed himself of forum benefits [citation]; (2) the controversy is related to or arises out of the defendant's contacts with the forum [citation]; and (3) the assertion of personal jurisdiction would comport with fair play and substantial justice [citations]." (*Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1062.) The plaintiff bears the initial burden of meeting the first two prongs of this test. (*Ibid.*) If the plaintiff meets this burden, the burden shifts to the defendant as to the third prong. (*Ibid.*)

"'The purposeful availment inquiry ... focuses on the defendant's intentionality. [Citation.] This prong is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on' his contacts with the forum. [Citation.]" (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 269.) "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." (*Walden v. Fiore* (2014) 571 U.S. 277, 290.) "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum state." (*Id.* at p. 284.) Further, "the plaintiffs cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." (*Id.* at p. 285.)

Under the second prong, "[i]n order for a state court to exercise specific jurisdiction, 'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'" (*Bristol*-Myers, supra, 582 U.S. at p. 262, emphasis in original.) "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" (*Ibid.*) The second prong is disjunctive and thus may be satisfied if the plaintiff shows that the claims are related to *or* arise out of the defendant's forum contacts. (*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court* (*Ford*) (2021) 592 U.S. 351, 361-362; see also *Daimler Trucks North America LLC v. Superior Court* (2022) 80 Cal.App.5th 946, 956 [noting that the *Ford* court "added a new layer to specific jurisdiction case law" by emphasizing the "or" of the second prong].) This means "that some relationships will support jurisdiction without a causal showing" between the defendant's forum contacts and the plaintiff's claims. (*Id.* at p. 362.)

If the plaintiff satisfies its burden on the first two prongs, "these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" (*Burger King Corp. v. Rudzewicz* (*Burger King*) (1985) 471 U.S. 462, 476.) These factors include "'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective

E-6

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO

E-7

relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'" (*Id.* at p. 477, quoting *World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286, 292.)

Here, Plaintiff's arguments appear to rely exclusively on the contacts and conduct of Moore Commerce, Inc. Plaintiff argues that Defendant Schnapf, as the Chief Executive Officer of More Commerce, Inc. has directly overseen and benefited from the company's extensive business operations within the State of California. Plaintiff contends in her Opposition brief that More Commerce operates nationwide, with a significant portion of its merchant base and customer transactions occurring within California. Plaintiff further argues that, as CEO, Schnapf is the ultimate decision maker for More Commerce operations, thereby legitimizing him as an appropriate party subject to the jurisdiction of this Court. Plaintiff further contends that More Commerce's business contacts within California, and thus, satisfies the purposeful availment, relatedness, and reasonableness analysis required. Lastly, Plaintiff contends that Defendant Schnapf attempts to evade accountability for alleged fraudulent practices. As supporting evidence, Plaintiff provides an unauthenticated email thread with More Commerce "representatives" at email address: "claims@morecommerce.com". (See Oppos., p. 3:23-27, Exh. A.)

Notably, and as set forth above, Plaintiff fails to provide any declarations or authenticated documents to support the exercise of personal jurisdiction over Defendant. Further, even if the Court considered the arguments and assertions raised in her Opposition brief, Plaintiff still fails to present supporting evidence regarding *Schnapf's* contacts with the forum; indeed, the emails attached to the Opposition brief fail to show any correspondence with Schnapf. (See *Calder v. Jones* (1984) 465 U.S. 783, 790 ["Each defendant's contacts with the forum State must be assessed individually."]; *Keeton v. Hustler Magazine, Inc.* (1984) 465 U.S. 770, 781 n.13 ["jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him; nor does jurisdiction over a parent corporation automatically establish jurisdiction over a wholly owned subsidiary"]; *Mihlon v. Superior Court* (1985) 169 Cal.App.3d 703 ["[I]t is well established by California case law that for jurisdictional purposes the acts of corporate officers and directors, in their official capacities, are acts exclusively of (*qua*) the corporation, and are thus not material for purposes of establishing minimum contacts as to individuals. . . . Accordingly, acts performed by individuals in such official capacities may not reasonably be attributed to them as individual acts creating personal jurisdiction."].)

Rather, Defendant has presented evidence that Plaintiff entered into a contract with More Commerce, Inc., and Schnapf never personally entered into a contract with Plaintiff (Schnapf Decl., ¶ 3.); Schnapf has never spoke to Plaintiff, has never emailed Plaintiff, has never corresponded with Plaintiff, has never met Plaintiff, never had a conversation with Plaintiff (in person, on telephone, or by other means of communication), and did not enter into a contract with Plaintiff (*Id.*, ¶ 9.); and Schnapf does not regularly travel to California, and has never been to California for the purpose of anything to do with Plaintiff. (*Id.*, ¶ 11.)

E-7

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO

*E-8*

To the extent that Plaintiff contends that Moore Commerce, Inc.'s contacts would be appropriately considered against Schnapf, under a theory of alter ego liability or corporate veil piercing, Plaintiff fails to provide adequate facts or argument in support of the application of these theories. The Court notes that Moore Commerce, Inc. does not appear to be named as defendant in this matter.

As Plaintiff has failed to meet the initial burden as to the first two prongs of the specific jurisdiction test, the Court need not consider whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." In sum, the Court finds that it may not exercise specific jurisdiction over Mr. Schnapf.

Disposition

Defendant Schnapf's motion to quash is GRANTED and he is dismissed from this action without prejudice. (Code Civ. Proc., §§ 418.10 (a)(1), 581(h).)

This minute order is effective immediately. No formal order or other notice is required. (Code Civ. Proc., § 1019.5; Cal. Rules Court, rule 3.1312.)

## COURT RULING

There being no request for oral argument, the Court affirmed the tentative ruling.

The Court orders Michael Schnapf in Complaint filed by Jacque Chokroda Ojadidi on 03/25/2025 dismissed without prejudice.

Certificate of Mailing is attached.

*/s/ L. Homsanith*   *E-8*

L. Homsanith, Deputy Clerk

By:

Minutes of: 11/17/2025
Entered on: 11/17/2025

Minute Order                                    Page 8 of 8

# EXHIBIT G

USPS Mailing Label from Defense Counsel showing typographic
error In Plaintiff's name
[Attached hereto]

Exhibit G



FROM:

UNITED STATES
POSTAL SERVICE.    PRIORITY®
MAIL

VISIT US AT USPS.COM®

FROM:

Gafni & Levin LLP
11811 San Vicente Blvd.
Los Angeles, CA 90049

TO:
Jacque Chokroda Ojadidi
10120 Wexted Way
Elk Grove, CA 95757

US POSTAGE PAID
$11.95    Origin: 92401
02/27/26
0587440401-5

PRIORITY MAIL®

0 Lb 8.90 Oz
RDC 03

EXPECTED DELIVERY DAY: 03/02/26
R072

SHIP
TO:
10120 WEXTED WAY
ELK GROVE CA 95757-5501

USPS TRACKING® #

9606 5141 0168 6069 6493 90

FLAT RATE EN
ONE RATE ■ ANY WEIGHT

TRACKED ■ INS

G-1

# EXHIBIT H

Email from Fernando Calderon, CPA, dated March 4, 2026
[Attached hereto]

# M Gmail

**Jacque Ojadidi <jacqueojadidi@gmail.com>**

## JMGJ

H-1

**Fernando Calderon** <fcalderon@aats-cpa.com>        Wed, Mar 4, 2026 at 7:26 PM
To: CWEB <jacqueojadidi@gmail.com>

Hello Jacque,

This is the SOI filed with the state... was probably a typo/auto correct? In any case, the SOI is currently overdue, should have been filed last year.

You can file the correct one here....

https://bizfileonline.sos.ca.gov/search/business

Log into the website, search for the business, select the business, then select FILE STATEMENT OF INFORMATION.

**Fernando Calderon, C.P.A.**

**Advanced Accounting & Tax Solutions**

10831 Downey Avenue

Downey, CA 90241

T 562-923-4681

H-1

# EXHIBIT I

## Corrected Statement of Information filed March 4, 20

### [Attached hereto]



## STATE OF CALIFORNIA
*Office of the Secretary of State*
## STATEMENT OF INFORMATION
## CORPORATION
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 657-5448

| For Office Use Only |
| --- |
| **-FILED-** |
| File No.: BA20260511476 |
| Date Filed: 3/4/2026 |

*Exhibit I-1*

### Entity Details

| | |
| --- | --- |
| Corporation Name | JMGJ GROUP INC. |
| Entity No. | 3986971 |
| Formed In | CALIFORNIA |

### Street Address of Principal Office of Corporation

| | |
| --- | --- |
| Principal Address | 10120 WEXTED WAY<br>ELK GROVE, CA 95757 |

### Mailing Address of Corporation

| | |
| --- | --- |
| Mailing Address | 10120 WEXTED WAY<br>ELK GROVE, CA 95757 |
| Attention | |

### Street Address of California Office of Corporation

| | |
| --- | --- |
| Street Address of California Office | 10120 WEXTED WAY<br>ELK GROVE, CA 95757 |

### Officers

| Officer Name | Officer Address | Position(s) |
| --- | --- | --- |
| JACQUE OJADIDI | 10120 WEXTED WAY<br>ELK GROVE, CA 95757 | Chief Executive Officer, Secretary, Chief Financial Officer |

### Additional Officers

| Officer Name | Officer Address | Position | Stated Position |
| --- | --- | --- | --- |
| None Entered | | | |

### Directors

| Director Name | Director Address |
| --- | --- |
| ⊞ jacque ojadidi | 10120 WEXTED WAY<br>10120 WEXTED WAY<br>ELK GROVE, CA 95757 |

The number of vacancies on Board of Directors is: 0

### Agent for Service of Process

| | |
| --- | --- |
| Agent Name | JACQUE OJADIDI |
| Agent Address | 10120 WEXTED WAY<br>ELK GROVE, CA 95757 |

### Type of Business

| | |
| --- | --- |
| Type of Business | jewelry |

*I-1*

### Email Notifications

| | |
| --- | --- |
| Opt-in Email Notifications | Yes, I opt-in to receive entity notifications via email. |

### Labor Judgment

No Officer or Director of this Corporation has an outstanding final judgment issued by the Division of Labor Standards Enforcement or a court of law, for which no appeal therefrom is pending, for the violation of any wage order or provision of the Labor Code.

Page 1 of 2



**Electronic Signature**

☒  By signing, I affirm that the information herein is true and correct and that I am authorized by California law to sign.

*jacque ojadidi*                                    *03/04/2026*              Exhibit I-2
_____                  _____        _____
Signature                                              Date

B4474-2736 03/04/2026 10:02 PM Received by California Secretary of State

I-2



# Secretary of State

**Business Programs Division**
1500 11th Street, Sacramento, CA 95814

I-3

jacque ojadidi
JMGJ GROUP INC.
10120 WEXTED WAY
ELK GROVE, CA  95757

Receipt Date:  03/04/2026
Receipt No.:   13037029

## Receipt Detail

| Description | Document/Payment No. | Amount |
|---|---|---|
| Corporation - Statement of Information | BA20260511476 | -$25.00 |
| Certified Copy - BE | BA20260511476 | -$5.00 |
| Payment - Web Credit Card | 44**********1960 / Auth. No. 951856 | $30.00 |

|  | Total Amount Charged: | -$30.00 |
|---|---|---|
|  | Total Payment Received: | $30.00 |

I-3

Page 1 of 1

# EXHIBIT J

Email chain between Plaintiff and Richard Starr dated January 13, 2025

[Attached hereto]

Case 2:25-cv-03360-DJC-JDP    Document 10    Filed 03/09/26    Page 61 of 77

 **Gmail**                    **Jacque Ojadidi <jacqueojadidi@gmail.com>**

⊐ -1

# More Commerce Log in

3 messages

**Organic Greek** <jacqueojadidi@gmail.com>                    Mon, Jan 13, 2025 at 9:34 AM
To: Richard Starr <richard.starr@morecommerceinc.com>, Piyush Vasoya
<vasoyapiyush@gmail.com>, Kirk B <kirk.bell@morecommerce.com>

> Hi Team,
> I'm not able to log into more commerce.
>
> Can you let me know
>
> Thank you
> Jacque

> We are sorry, but the page you have requested is not available at this time.

---

**Richard Starr** <richard.starr@morecommerceinc.com>                    Mon, Jan 13, 2025 at 9:36
AM
To: Support <support@help.morecommerce.com>, Organic Greek <jacqueojadidi@gmail.com>,
Piyush Vasoya <vasoyapiyush@gmail.com>

> Please assist this merchant
>
> ---------- Forwarded message ----------
> From: **Organic Greek** <jacqueojadidi@gmail.com>
> Date: Mon, Jan 13, 2025 at 12:34 PM
> Subject: More Commerce Log in

⊐ -1

Case 2:25-cv-03360-DJC-JDP    Document 10    Filed 03/09/26    Page 62 of 77

To: Richard Starr <richard.starr@morecommerceinc.com>, Piyush Vasoya
<vasoyapiyush@gmail.com>, Kirk B <kirk.bell@morecommerce.com>

Hi Team,
I'm not able to log into more commerce.

Can you let me know

Thank you
Jacque

**⅃-2**

moreconmerce
solutions

Seamless Integrations    Access Everywhere    Merchant Testimonials    Contact Us

We are sorry, but the page you have requested is not available at this time.

---

**Craig A. (Support)** <support@help.morecommerce.com>

Mon, Jan 13, 2025 at
11:57 AM

Reply-To: Support <support@help.morecommerce.com>
To: Richard Starr <richard.starr@morecommerceinc.com>
Cc: Paris Jewelry <jacqueojadidi@gmail.com>, Piyush Vasoya <vasoyapiyush@gmail.com>

##- Please type your reply above this line -##

Your request has been updated. To add additional comments, reply to this email.

## Craig A. (Support)

Jan 13, 2025, 11:57 AM PST

Hello paris-jewelry,

**⅃-2**

Thank you for contacting MoreCommerce Support.    I am sorry to hear that you have

had trouble accessing your account.

J-3

We are unaware of any issues with the site or accessing accounts at this time, and have not been receiving reports to suggest a widespread issue, so it is unclear what may have occurred for you.

Given that you have had trouble, I recommend that you clear the cache of your browser prior to trying again to ensure that no site pages have been erroneously cached. If you are unfamiliar with the steps to clear your browser's cache, you can locate them by entering your browser name and version number into your favorite search engine with the words "Clear Cache." You can also find browser-specific instructions here: https://kinsta.com/knowledgebase/how-to-clear-browser-cache/

Once you have cleared your browser cache, please try logging in again.

If you continue to experience difficulty, please try using the Forgot Password option to reset your password and then try logging in again with the new credentials.

Should the issue persist, please let me know the steps you are taking that lead up to this issue and where in the process you are encountering this page so I can look into it further.

If you need any further assistance please let me know.

Thank you,
Craig A.
The MoreCommerce Team

**Richard Starr**

Jan 13, 2025, 9:37 AM PST

J-3

Please assist this merchant

---------- Forwarded message ----------

From: **Organic Greek** <jacqueojadidi@gmail.com>

Date: Mon, Jan 13, 2025 at 12:34 PM

Subject: More Commerce Log in

To: Richard Starr <richard.starr@morecommerceinc.com>, Piyush Vasoya <vasoyapiyush@gmail.com>, Kirk B <kirk.bell@morecommerce.com>

J-4

Hi Team,

I'm not able to log into more commerce.

Can you let me know

Thank you

Jacque

image.png

This email is a service from Support. Delivered by Zendesk

[^DYG^JP-ZNP6F]

J-4

# EXHIBIT L

Email notifications of orders processed January 18-20, 2025

[Attached hereto]

 Gmail                    **Jacque Ojadidi <jacqueojadidi@gmail.com>**

$L-1$

# You have a new order!

22 messages

**MoreCommerce** <support@help.morecommerce.com>          Sat, Jan 18, 2025 at 1:01 PM
Reply-To: support@help.morecommerce.com
To: jacqueojadidi@gmail.com

MoreCommerce

## Hi jmgj group inc,

Congrats! You received a new order: #108494878

# Ship Your Order

© 2025 Morecommerce, Inc.
220 Commerce Drive STE 100, Fort Washington, PA 19034

**MoreCommerce** <support@help.morecommerce.com>          Sat, Jan 18, 2025 at 1:01 PM
Reply-To: support@help.morecommerce.com
To: jacqueojadidi@gmail.com

MoreCommerce

## Hi jmgj group inc,

Congrats! You received a new order: #108494892

$L-1$

# Ship Your Order

*L-2*

---

© 2025 Morecommerce, Inc.
220 Commerce Drive STE 100, Fort Washington, PA 19034

---

**MoreCommerce** <support@help.morecommerce.com>          Sat, Jan 18, 2025 at 6:01 PM
Reply-To: support@help.morecommerce.com
To: jacqueojadidi@gmail.com

MoreCommerce

## Hi jmgj group inc,

Congrats! You received a new order: #108495094

# Ship Your Order

---

© 2025 Morecommerce, Inc.
220 Commerce Drive STE 100, Fort Washington, PA 19034

---

**MoreCommerce** <support@help.morecommerce.com>          Sat, Jan 18, 2025 at 11:01 PM
Reply-To: support@help.morecommerce.com
To: jacqueojadidi@gmail.com

MoreCommerce

*L-2*

**Hi jmgj group inc,**

Congrats! You received a new order: #108495265

$L-3$

## Ship Your Order

---

© 2025 Morecommerce, Inc.
220 Commerce Drive STE 100, Fort Washington, PA 19034

---

**MoreCommerce** <support@help.morecommerce.com>    Sat, Jan 18, 2025 at 11:01 PM
Reply-To: support@help.morecommerce.com
To: jacqueojadidi@gmail.com

MoreCommerce

**Hi jmgj group inc,**

Congrats! You received a new order: #108495269

## Ship Your Order

---

© 2025 Morecommerce, Inc.
220 Commerce Drive STE 100, Fort Washington, PA 19034

---

**MoreCommerce** <support@help.morecommerce.com>    Sun, Jan 19, 2025 at 9:01 AM
Reply-To: support@help.morecommerce.com
To: jacqueojadidi@gmail.com

$L-3$

MoreCommerce

L-4

## Hi jmgj group inc,

Congrats! You received a new order: #108495357

# Ship Your Order

© 2025 Morecommerce, Inc.
220 Commerce Drive STE 100, Fort Washington, PA 19034

**MoreCommerce** <support@help.morecommerce.com>        Sun, Jan 19, 2025 at 9:01 AM
Reply-To: support@help.morecommerce.com
To: jacqueojadidi@gmail.com

MoreCommerce

## Hi jmgj group inc,

Congrats! You received a new order: #108495372

# Ship Your Order

© 2025 Morecommerce, Inc.
220 Commerce Drive STE 100, Fort Washington, PA 19034

L-4

**MoreCommerce** <support@help.morecommerce.com>    Sun, Jan 19, 2025 at 2:05 PM
Reply-To: support@help.morecommerce.com
To: jacqueojadidi@gmail.com

MoreCommerce

*L-5*

### Hi jmgj group inc,

Congrats! You received a new order: #108495567

## Ship Your Order

---

© 2025 Morecommerce, Inc.
220 Commerce Drive STE 100, Fort Washington, PA 19034

---

**MoreCommerce** <support@help.morecommerce.com>    Sun, Jan 19, 2025 at 2:05 PM
Reply-To: support@help.morecommerce.com
To: jacqueojadidi@gmail.com

MoreCommerce

### Hi jmgj group inc,

Congrats! You received a new order: #108495572

## Ship Your Order

*L-5*

---

© 2025 Morecommerce, Inc.
220 Commerce Drive STE 100, Fort Washington, PA 19034

**MoreCommerce** <support@help.morecommerce.com>
Reply-To: support@help.morecommerce.com
To: jacqueojadidi@gmail.com

Sun, Jan 19, 2025 at 3:06 PM

*L-6*

MoreCommerce

## Hi jmgj group inc,

Congrats! You received a new order: #108495637

# Ship Your Order

© 2025 Morecommerce, Inc.
220 Commerce Drive STE 100, Fort Washington, PA 19034

**MoreCommerce** <support@help.morecommerce.com>
Reply-To: support@help.morecommerce.com
To: jacqueojadidi@gmail.com

Sun, Jan 19, 2025 at 3:06 PM

MoreCommerce

## Hi jmgj group inc,

Congrats! You received a new order: #108495640

*L-6*

# Ship Your Order

© 2025 Morecommerce, Inc.
220 Commerce Drive STE 100, Fort Washington, PA 19034    L-7

**MoreCommerce** <support@help.morecommerce.com>                    Sun, Jan 19, 2025 at 3:06 PM
Reply-To: support@help.morecommerce.com
To: jacqueojadidi@gmail.com

MoreCommerce

### Hi jmgj group inc,

Congrats! You received a new order: #108495643

# Ship Your Order

© 2025 Morecommerce, Inc.
220 Commerce Drive STE 100, Fort Washington, PA 19034

**MoreCommerce** <support@help.morecommerce.com>                    Sun, Jan 19, 2025 at 5:05 PM
Reply-To: support@help.morecommerce.com
To: jacqueojadidi@gmail.com

MoreCommerce

### Hi jmgj group inc,

Congrats! You received a new order: #108495701    L-7

# Ship Your Order

$L-8$

© 2025 Morecommerce, Inc.
220 Commerce Drive STE 100, Fort Washington, PA 19034

**MoreCommerce** <support@help.morecommerce.com>
Reply-To: support@help.morecommerce.com
To: jacqueojadidi@gmail.com

Sun, Jan 19, 2025 at 7:05 PM

MoreCommerce

## Hi jmgj group inc,

Congrats! You received a new order: #108495780

# Ship Your Crder

© 2025 Morecommerce, Inc.
220 Commerce Drive STE 100, Fort Washington, PA 19034

**MoreCommerce** <support@help.morecommerce.com>
Reply-To: support@help.morecommerce.com
To: jacqueojadidi@gmail.com

Sun, Jan 19, 2025 at 7:06 PM

MoreCommerce

$L-8$

**Hi jmgj group inc,**

Congrats! You received a new order: #108495794

*L-9*

## Ship Your Order

© 2025 Morecommerce, Inc.
220 Commerce Drive STE 100, Fort Washington, PA 19034

**MoreCommerce** <support@help.morecommerce.com>      Sun, Jan 19, 2025 at 8:05 PM
Reply-To: support@help.morecommerce.com
To: jacqueojadidi@gmail.com

MoreCommerce

**Hi jmgj group inc,**

Congrats! You received a new order: #108495812

## Ship Your Order

© 2025 Morecommerce, Inc.
220 Commerce Drive STE 100, Fort Washington, PA 19034

**MoreCommerce** <support@help.morecommerce.com>      Sun, Jan 19, 2025 at 8:05 PM
Reply-To: support@help.morecommerce.com
To: jacqueojadidi@gmail.com

*L-9*

MoreCommerce

*L-10*

## Hi jmgj group inc,

Congrats! You received a new order: #108495816

# Ship Your Order

© 2025 Morecommerce, Inc.
220 Commerce Drive STE 100, Fort Washington, PA 19034

**MoreCommerce** <support@help.morecommerce.com>          Sun, Jan 19, 2025 at 8:05 PM
Reply-To: support@help.morecommerce.com
To: jacqueojadidi@gmail.com

MoreCommerce

## Hi jmgj group inc,

Congrats! You received a new order: #108495820

# Ship Your Order

© 2025 Morecommerce, Inc.
220 Commerce Drive STE 100, Fort Washington, PA 19034

*L-10*

Case 2:25-cv-03360-DJC-JDP    Document 10    Filed 03/09/26    Page 76 of 77

**MoreCommerce** <support@help.morecommerce.com>
Reply-To: support@help.morecommerce.com
To: jacqueojadidi@gmail.com

Sun, Jan 19, 2025 at 9:06 PM

*L -11*

MoreCommerce

Hi jmgj group inc,

Congrats! You received a new order: #108495871

# Ship Your Order

© 2025 Morecommerce, Inc.
220 Commerce Drive STE 100, Fort Washington, PA 19034

**MoreCommerce** <support@help.morecommerce.com>
Reply-To: support@help.morecommerce.com
To: jacqueojadidi@gmail.com

Sun, Jan 19, 2025 at 10:05 PM

MoreCommerce

Hi jmgj group inc,

Congrats! You received a new order: #108495901

# Ship Your Order

*L -11*

© 2025 Morecommerce, Inc.
220 Commerce Drive STE 100, Fort Washington, PA 19034

L-12

**MoreCommerce** <support@help.morecommerce.com>      Mon, Jan 20, 2025 at 5:00 AM
Reply-To: support@help.morecommerce.com
To: jacqueojadidi@gmail.com

MoreCommerce

## Hi jmgj group inc,

Congrats! You received a new order: #108495968

# Ship Your Order

© 2025 Morecommerce, Inc.
220 Commerce Drive STE 100, Fort Washington, PA 19034

**MoreCommerce** <support@help.morecommerce.com>      Mon, Jan 20, 2025 at 9:00 AM
Reply-To: support@help.morecommerce.com
To: jacqueojadidi@gmail.com

MoreCommerce

## Hi jmgj group inc,

Congrats! You received a new order: #108496012

# Ship Your Order     L-12